**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **KATHRYN MARKS,** | § | |
| **Petitioner** | § | |
| | § | |
| **V.** | § | **Civil Action # No. 1:26-CV-487-DAE** |
| | § | |
| **TREVOR COLM** | § | |
| **Respondent** | § | |

### <u>RESPONDENT'S MEMORANDUM OF LAW ON THE ISSUE OF HABITUAL RESIDENCE</u>

Comes now Respondent, TREVOR COLM, and files his Memorandum of Law on the Issue of Habitual Residence.  Respondent would show the following:

### I.    Background

1.    In her Petition for Return, KATHRYN MARKS (the "Petitioner" or "Ms. Marks") claims that Mexico is the habitual residence of the child the subject of this suit. ECF Doc. 1, (*Petition for Return*, ¶20).  In support of this claim, Petitioner states that the child had been physically residing in Mexico from February 2023 until December 2025.  ECF Doc. 1 (*Petition for Return*, ¶¶7, 20).

2.    Petitioner took the child to Mexico when the child was seven months old.  Prior to that time, the child resided in Texas where she was born.

3.    The evidence will establish that the child was only in Mexico as a result of Petitioner's abduction of the child from Texas to Mexico in 2023. The evidence will further establish that Respondent had filed a suit for return of the child under the Hague Abduction Convention in a Mexican court, and that suit was still pending at the time that Petitioner and child were deported from Mexico.

## II.    Argument and Authorities

4.    The fact that the child spent nearly three years in Mexico does not establish habitual residence.  In fact, Mexican cannot be the child's habitual residence, because she was only there as a result of Petitioner's abduction of the child from Texas to Mexico in 2023.

5.    When conducting a habitual residence analysis, a court must consider *all* circumstances, not just the amount of time in one country. In *Monasky v. Taglieri*, the United States Supreme Court adopted a totality-of-the-circumstances test for determining a child's habitual residence.  *Monasky v. Taglieri*, 589 U.S. 68, 78 (2020).  The Supreme Court held that it is a fact-driven inquiry "sensitive to the unique circumstances of the case and informed by common sense."  *Id*. (citing *Redmond v. Redmond*, 724 F.3d 729, 744 (7th Cir. 2013)).  While the Supreme Court concluded that some cases will be straight forward, it also explained that the "unique circumstances" of other cases will yield different results.

6.    The "unique circumstances"  a court must consider include the age and intent of the parents.  Parental intent becomes more important when the child is young, as in this case. According to the holding in *Monasky*, young children cannot sufficiently acclimate and form their own independent connections to a place; therefore, the intentions and the circumstances of parents are relevant considerations when assessing all facts in a habitual residence analysis.  *Id.*  As a result, the length of time a young child has spent in one location is not dispositive.  The Supreme Court posited a scenario in which a child has lived in a country only because one parent was forced to remain there; the court suggested that forced presence would not give rise to habitual residence, regardless of the length of time spent in the alleged country of habitual residence.  *Id*.

7.    The Supreme Court further emphasized that, by considering all circumstances and not just the length of time spent in a country, parents "should find it more, not less difficult to

2

manipulate the reality on the ground, thus impeding them from 'forging artificial jurisdictional links.'" *Id*. at 82 (citing 1980 Conférence de La Haye de droit international privé, Enlèvement d'enfants, E. Pérez-Vera, Explanatory Report in 3 Actes et documents de la Quatorzième session, p. 428, ¶11 (1982) (Pérez-Vera).

8.      In fact, courts applying the totality-of-the-circumstances analysis for habitual residence have specifically held that "a parent cannot create a new habitual residence by the wrongful removal and sequestering of a child.  That would invite abduction."  *Redmond v. Redmond*, 724 F.3d 729, 743 (7th Cir. 2013) (citing *Kijowska v. Haines*, 463 F.3d 583, 586 (7th Cir. 2006)).  Allowing a parent to establish a new habitual residence through abduction would be contrary to the Convention's goal of discouraging abductions by denying to the abductor any legal advantage from the abduction.  *Kijowska*, 463 F.3d at 588-89.

9.      The law dictates that Mexico cannot be the child's habitual residence, because Petitioner's argument is nothing more than an attempt to fabricate a legal advantage through her own abduction of this child to Mexico. Her argument directly undermines the goals of the Convention and the jurisprudence of our courts.

10.      Because she cannot satisfy her threshold burden of establishing that Mexico was the habitual residence of the child, her petition must be denied.

Respectfully submitted,

LAURA DALE & ASSOCIATES, P.C.

/s/ Ashley V. Tomlinson
ASHLEY V. TOMLINSON
Texas State Bar No. 24075170
atomlinson@dalefamilylaw.com
eserviceavt@dalefamilylaw.com (E-Service)
1800 Saint James Place, Suite 620
Houston, Texas 77056
Telephone: (713) 600-1717

## CERTIFICATE OF SERVICE

I certify that a true copy of this document was served in accordance with Federal Rule of Civil Procedure 5 on the following on March 19, 2026, as follows:

Natalie L. Webb, attorney for Petitioner
Via Electronic Service firm@webbfamilylaw.com


/s/ Ashley V. Tomlinson
ASHLEY V. TOMLINSON